## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re

JET NETWORK, LLC,

      Debtor.

_____/

ALAN GOLDBERG, Chapter 7 Trustee for
the estate of Jet Network, LLC,

      Trustee,

v.

JET FIRST, INC., a Florida corporation,

      Defendant.

_____/

ALAN GOLDBERG, Chapter 7 Trustee for
the estate of Jet Network, LLC,

      Trustee,

v.

CHRISTOPHER K. DOSCHER,
PAUL PARMAR A/K/A PARMJIT SING
PARMAT, PEGASUS ELITE AVIATION,
LLC, AND PEGASUS ELITE AVIATION,
INC.,

      Impleaded Defendants.

_____/

CASE NO. 08-11165-BKC-RAM

CHAPTER 7

ADV. NO. 08-01737-BKC-RAM-A

## IMPLEADER COMPLAINT TO SET ASIDE FRAUDULENT CONVEYANCE TO SATISFY JUDGMENT AND FOR OTHER RELIEF

Plaintiff, Alan Goldberg ("Plaintiff" or "Trustee"), Chapter 7 Trustee for the estate of Jet

Network, LLC (the "Debtor" or "Jet Network"), by and through undersigned counsel, pursuant to

Fla. Stat. § 56.29, Fed. R. Bankr. P. 7069 and Local Rule 7069-1(D), Fed. R. Bankr. P 7001 and

this Court's April 24, 2010 *Order on Plaintiff's Motion to Commence Supplementary Proceedings and to Implead Third Parties* [C.P. 28], hereby sues impleaded Defendants, Christopher Doscher ("Doscher"), Paul Parmar a/k/a Parmjit Sing Parmat ("Parmar"), Pegasus Elite Aviation, LLC ("Pegasus LLC"), a Delaware limited liability company, and Pegasus Elite Aviation, Inc., a Nevada corporation ("Pegasus Inc") (Doscher, Parmar, Pegasus LLC and Pegasus Inc will sometimes be referred to herein as "Impleaded Defendants"), and in support thereof states:

## INTRODUCTION

1.       Within a few months prior to bankruptcy filing of Jet Network, the Impleaded Defendants acted in concert to strip Jet First of its most valuable asset by fraudulently transferring all of the stock ownership Jet First had in Executive Charters, Inc. ("Executive Chaters") to Parmar or his designee. Executive Charters owned a valuable non-transferable Part-135 Certificate issued by the Federal Aviation Administration ("FAA"), which enabled Jet First to conduct on-demand air charter and air taxi operations for hire. Jet First's ownership of Executive Charter and its assets, including, but not limited to, the Part-135 Certificate, can be used to satisfy the Trustee's judgment against Jet First.

2.       In carrying out their master plan to fraudulently divest Executive Charters from Jet First. Executive Charters together with its Part-135 Certificate, identified as Certificate No. EOXA241J, eventually ended up being wholly owned by Pegasus LLC and/or Pegasus Inc., which business are entities believed to be owned and controlled by Parmar. Through this post-judgment supplementary collection proceeding, Plaintiff seeks to avoid the fraudulently transferred stock ownership of Executive Charters to Doscher, Pegasus LLC and/or Pegasus Inc., and to recover Jet First's stock ownership in Executive Charters and all of its assets, including,

but not limited to, the Part-135 Certificate and any other assets of Jet First in aid of execution of Plaintiff's judgment against Jet First.

## JURISDICTION, VENUE AND PARTIES

3.      On January 31, 2008 (the "Petition Date"), Whitney George, William Angrick, Charles Biederman, Donald Green, PJK Consulting, Inc., and Charles L. Davidson, filed an involuntary petition against Jet Network for the entry of an order for relief under Chapter 7, title 11 of the United States Code (the "Bankruptcy Code").

4.      On February 27, 2008, this Court entered an Order for Relief against the Debtor. Shortly thereafter, Plaintiff was appointed as the duly acting Chapter 7 trustee for the Debtor's bankruptcy estate.

5.      Jet First is an administratively dissolved Florida corporation.

6.      Jet First had a one hundred percent stock ownership interest in Executive Charters.

7.      On October 30, 2008, Plaintiff commenced this adversary proceeding against Defendant, Jet First, Inc. ("Jet First" or "Judgment Debtor"), seeking, among other things, to avoid and recover certain pre-petition transfers pursuant to Sections 544(b), 548(a) and 550(a) of the Bankruptcy Code and Chapter 726 of the Florida Statutes (the "Complaint"). [C.P. 1].

8.      Plaintiff currently holds an unsatisfied final judgment against Jet First in the principal aggregate sum of $6,695,752 (the "Judgment"). Plaintiff, as plaintiff in execution, has not received any satisfaction of the Judgment, in full or in part, to date.

9.      On July 1, 2009, this Court issued a Writ of Execution under the Judgment, which also remains valid and unsatisfied.

10.     Doscher was Jet First's President and director, and is an individual who resides Wellington, Florida and is otherwise *sui juris*.

11.     Parmar is an individual who resides in the State of New Jersey, and is otherwise *sui juris*.

12.     Pegasus LLC is a Delaware limited liability company.

13.     Pegasus Inc. is a Nevada corporation.

14.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  Further, this Court's jurisdiction is proper based on Fed. R. Civ. P. 69 as made applicable to this proceeding by Fed. R. Bankr. P. 7069.

15.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.  Moreover, venue is also proper in this district as Plaintiff is seeking to enforce and execute on the Judgment issued by this Court.

## FACTS COMMON TO ALL CLAIMS

### A.    General Background

17.     Prior to the bankruptcy filing, Jet Network was in the business of assisting customers in obtaining private air transportation in exchange for a fee.  Jet Network's business model focused on matching customers who required private air transportation with third parties who owned and/or operated private aircrafts. Among the features Jet Network offered its customers was the Flight Card Program, whereby customers entered into written contracts with Jet Network to prepay private jet air travel hours.  Pursuant to the contracts, customers would generally deposit a specified minimum sum of money with Jet Network, and Jet Network would in turn book private jet flights to chartered destinations according to a price schedule that Jet

Network billed against the customer's deposit at specified fixed rates per hour of jet use. Many of Jet Network's customers became members of the Flight Card Program, and deposited their funds with Jet Network for future private jet air travel. Some of the customers required their deposits to be held in an account by a designated escrow agent.

18.     In June 2005, Jet First was incorporated. Jet First was engaged in the business of chartering, maintaining and operating private aircrafts for hire.

19.     Upon information and belief, Jet First was co-owned by Stuart L. Caulf, the Debtor's former Chief Executive Officer, director and co-founder, and Michael Keister, the Debtor's former Chief Administrative Officer, Chief Financial Officer, and co-founder.

20.     From time to time, Jet Network would use the services of Jet First to charter private jet flights to its *ad hoc* and Flight Card Program chartering customers. The idea was to provide synergy between the two companies - - while Jet Network provided the marketing arm for customers, Jet First provided the charter fleet, service and operations.

**B.     Debtor's Acquisition of Executive Charters**

21.     In late 2005, Jet First acquired the assets and operations of Pacific Jet, Inc. ("Pacific Jet"), a bankrupt Nevada corporation with operations in California. The original plan was to provide a dedicated lift to Jet Network at cost in order to increase overall profitability for the enterprise.

22.     Doscher acted as Jet First's sole director and officer, holding the title of President. Doscher was placed in such position of trust in exchange for a minority equity interest in Jet First.

23.     Subsequent to the acquisition of the assets and operations of Pacific Jet, Jet First planned on expanding its operations by acquiring other Part-135 operators in various cities

around the United States. The expansion plan was believed to provide cost efficiencies to Jet First's operations by making available round-trip lifts and avoid incurring a great deal of repositioning hours or heavy repositioning charges by being strategically located in cities where the bulk charter flights both start and end. These benefits of rolling up Part 135 operators were also believed to cascade and continue to contribute to Jet Network's overall operations and profitability.

24.     Jet Network later changed the business model of rolling up and acquiring the assets and operations of various Part-135 operators because of the many disadvantages to provide effective and efficient charter lift to customers. It was thought that Part-135 operators did not necessarily guarantee the lift because the operators had their own agenda, various types of planes and internal configurations, different maintenance, training, and most importantly from a revenue generating point of view: the real availability of charter hours. Under the new business model, the enterprise would be able to standardize the type of aircraft, maintenance, training, crew, and interior for the delivery of high efficiency and cheaper cost of delivery for each lift.

25.     To that end, Jet First acquired one hundred percent interest in Executive Charters, a Part-135 certified Florida company based in Clearwater, Florida for the total sum of $100,000.00. On December 21, 2005, Insured Aircraft Title Service, Inc., which acted as the closing agent for the transaction, confirmed its receipt of the funds to close the sale. Indeed, Jet Network funded $80,000.00 of the $100,000.00 needed to consummate the transaction. On or about January 15, 2006, the acquisition of Executive Charters closed, vesting one hundred percent of ownership in the enterprise onto Jet First. Copies of Executive Charter's stock transfer ledger, irrevocable stock powers to Jet First, and stock certificate evidencing the transfer of

ownership to Jet First are attached hereto as **Composite Exhibit A**.

26.     Because of the relationships Jet Network and Jet First had with the top management of the Federal Aviation Administration's Federal Standard District Office in Clearwater, Florida, Jet First decided to retire the Pacific Jet Part-135 certificate, and exclusively retain the Executive Charters' certificate.  Upon the acquisition of Executive Charters, Doscher was immediately named as its sole director and director, holding the title of President.  Doscher was also placed in this position of trust in order for Executive Charters to be able to continue to qualify for the Part-135 certificate.    Executive Charters later changed its corporate name to Pegasus Elite Aviation, Corp., an entity administratively dissolved by the State of Florida.

**D.     Fraudulent Transfer of Executive Charter's Stock**

27.     By early to mid 2007, Jet Network's business was in a real steep decline and its financial condition was continuously worsening each day.    Likewise, Jet First's financial condition had deteriorated to the point of no return, whereby Parmar and Zaharis sought the advice of bankruptcy counsel and decided to do nothing and put in place a strategy to shut down all operations. In so doing, with the assistance of Jet Network's in-house counsel, Seth Coblentz ("Coblentz"), Parmar and Zaharis together with Doscher concocted a master plan to divest Executive Charters from Jet First in order to keep to themselves its most valuable asset - - the Part-135 Certificate.  The idea was to reflect in some written instrument and in the books that Jet First was leasing Executive Charters' Part-135 Certificate to Jet First.

28.     However, the master plan required the backdating documents and changing Jet First's ownership of Executive Charters.  The plan was to retroactively transfer all of Jet First's stock ownership in Executive Charters to Doscher to supposedly satisfy a loan made by Doscher in the amount of $100,000.00 to Jet First for its acquisition of Executive Charter.  Notably, no

such loan existed as Jet Network and Jet First clearly had paid for the acquisition of Executive Charters.

29.     Nonetheless, on or about May 24, 2007, Coblentz drafted and sent Doscher via electronic mail a document for his signature backdated to January 15, 2006 entitled the "*Minutes of Special Joint Meeting of the Board Directors and Shareholders of Jet First, Inc.*," whereby Jet First transferred all the stock in Executive Charters to Doscher in exchange for Doscher's forgiveness of all debt allegedly owed to him by Jet First, including the $100,000.00 used to purchase Jet First.  In the same electronic mail, Coblentz also enclosed a second document for Doscher's signature backdated to May 15, 2007 entitled "*Minutes of Special Joint Meeting of the Board Directors and Shareholders of Executive Charters, Inc.*" and "*Executive Charters, Inc.'s Certificate Transfer Agreement*," both in which now Doscher agreed to fraudulently transfer all of the stock of Executive Charters to Parmar or his designee in exchange for Parmar's debt forgiveness in the amount of $150,000.000 on account of loans made to Doscher by Jet First or for which he is a guarantor of the loans allegedly made by Parmar to Jet First and/or Executive Charters (the "Fraudulent Stock Transfer").  A copy of the email exchange is attached hereto as **Composite Exhibit B**.

30.     Upon information and belief, all the documents in connection with the Fraudulent Stock Transfer were contemporaneously executed by Doscher when sent to him, and Executive Charters together with its Part-135 Certificate, identified as Certificate No. EOXA241J, eventually ended up as being wholly owned by Pegasus  LLC - - a Delaware limited liability company believed to be owned and controlled by Parmar with its principal place of business located in Kinston Airport, 2730 Rouse Road Ext., Kinston, North Carolina - - or Pegasus Inc - - a Nevada corporation also believed to be owned and controlled by Parmar with its mailing

address at 312 West Fourth Street, Carson City, Nevada and principal place of business believed

to be also located in Kinston Airport, 2730 Rouse Road Ext., Kinston, North Carolina.

### COUNT I
#### SETTING ASIDE FRAUDULENT STOCK TRANSFER
#### UNDER FLA. STAT. § 56.29 TO SATISFY PLAINTIFF'S JUDGMENT

31.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through

30 as if fully set forth herein.

32.     This is a creditor action by Plaintiff against the Impleaded Defendants under Fla.

Stat. § 56.29 to set aside the Fraudulent Stock Transfer and transfer of any other assets of

Executive Charters to satisfy Plaintiff's Judgment.

33.     Within one year before the Petition Date, Jet First, as judgment debtor, had title

and owned all the shares of Executive Charters and its assets.

34.     On or about May 24, 2007, Jet First, as judgment debtor, made the Fraudulent

Stock Transfer as well as the assets of Executive Charters to the Impleaded Defendants without

consideration.

35.     The Fraudulent Stock Transfer and the transfer of Executive Charters' assets

constituted a transfer of Jet First's interest in property owned by Jet First at the time of the

conveyance.

36.     The Fraudulent Stock Transfer the transfer of Executive Charters' assets were

conveyed and received by the Impleaded Defendants with the intent to hinder, delay and defraud

creditors.

37.     Pursuant to Fla. Stat. § 56.29, Plaintiff can avoid and set aside the Fraudulent

Stock Transfer as well as the assets of Executive Charters to satisfy his Judgment.

WHEREFORE, Plaintiff demands the entry of judgment against the Impleaded

Defendants, jointly and severally: (i) setting aside the Fraudulent Stock Transfer and the transfer

of Executive Charters' assets, including, but not limited to, its Part-135 Certificate to the Impleaded Defendants to satisfy Plaintiff's Judgment under Fla. Stat. § 56.29; (ii) ordering the payment of all costs and expenses incurred by Plaintiff in regard to this action as provided by under Fla. Stat. § 56.29; and (iii) awarding any other relief the Court deems appropriate.

<u>**COUNT II**</u>
<u>**ACCOUNTING**</u>

38.     Plaintiff repeats and realleges each and every allegation in Paragraphs <u>1</u> through <u>37</u> as if fully set forth herein.

39.     This an action by Plaintiff against the Impleaded Defendants for an accounting pursuant to Fla. Stat. §56.29.

40.     Plaintiff is entitled to receive an accounting of all matters and things pertaining to the business and financial interests of Jet First which may tend to show what property it has and its location, including, but not limited to, all transactions, assets, and other dealings related to Jet First, Executive Charters and the Fraudulent Stock Transfer between Jet First and among the Impleaded Defendants.

WHEREFORE, Plaintiff demands the entry of judgment against the Impleaded Defendants, jointly and severally: (i) requiring an accounting be provided by the Impleaded Defendants to Plaintiff relating to Executive Charters and all transactions involving the Fraudulent Stock Transfer between Jet First and among the Impleaded Defendants; and (ii) awarding any other relief the Court deems just and appropriate.


[SPACE INTENTIONALLY LEFT BLANK]

Respectfully submitted this <u>14th</u> day of May, 2010.

GENOVESE JOBLOVE & BATTISTA, P.A.
*Counsel for Plaintiff*
Bank of America Tower
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Tel.: (305) 349-2300
Fax.: (305) 349-2310


By: /s/ Carlos E. Sardi
    Gregory M. Garno, Esq.
    Florida Bar No. 087505
    Email: ggarno@gjb-law.com
    Carlos E. Sardi, Esq.
    Florida Bar No. 781401
    Email: csardi@gjb-law.com

12/21/2005 11:23 FAX  4056820818        IATS-JR



## Insured Aircraft Title Service, Inc.

P.O. Box 19527 • Oklahoma City, Oklahoma 73144 • (405) 681-6663
EMAIL    jr.iats@earthlink.net        (800) 654-4882
FAX      405-682-0818

Courier Address:    4848 SW 36th, Oklahoma City, OK
73179

**December 21, 2005**

**Lee Krelstein**
**305-468-6520**

**Re:  Executive Charter 135 Certificate**

**Dear Lee:**

**This will confirm receipt of $80,000.00 today from Jet Network LLC
with respect to the above-referenced Certificate.  We are now holding a
total of $100,000.00 in escrow - $80,000.00 from Jet Network LLC and
$20,000.00 from Jetfirst Inc.**

Sincerely,

**JOAN F. ROBERTS**



EXHIBIT

Serving the Aviation Industry for over 40 years

# CITY NATIONAL BANK

JET NETWORK LLC
December 31, 2005

| Date | Description | Additions | Subtractions | Balance |
|------|-------------|-----------|--------------|---------|
| 12-21 | Wire Transfer-Out | | -80,000.00 | 729,984.67 |
| | Insured Aircraft T itle Service | | | |
| 12-21 | Wire Transfer-Out | | -50,000.00 | 679,984.67 |
| | Kenneth Carmel | | | |
| 12-21 | Deposit | 5,106.25 | | 685,090.92 |
| 12-21 | Check 1717 | | -48.10 | 685,042.82 |
| 12-22 | Wire Transfer-Out | | -86,286.07 | 598,756.75 |
| | RCPs Lear LLC | | | |
| 12-22 | Wire Transfer-Out | | -27,380.48 | 571,376.27 |
| | Pacific Jet Ventur e LLC | | | |
| 12-22 | Wire Transfer-Out | | -22,125.36 | 549,250.91 |
| | Learjet Inc | | | |
| 12-22 | Wire Transfer-IN | 165,000.00 | | 714,250.91 |
| | JET NETWORK LLC OU TGOING | | | |
| 12-22 | Transfer Debit | | -31,500.00 | 682,750.91 |
| | TRANSFER TO DEPOSIT ACCOUNT 6003440104 | | | |
| 12-22 | Check 1721 | | -11,250.00 | 671,500.91 |
| 12-22 | Check 6860 | | -1,865.95 | 669,634.96 |
| 12-22 | Preauthorized Wd | | -155,100.31 | 514,534.65 |
| | AMERICAN EXPRESS ELEC REMIT 051222 | | | |
| 12-22 | Preauthorized Wd | | -8,004.01 | 506,530.64 |
| | AMERICAN EXPRESS COLLECTION 051222 4091484980 | | | |
| 12-22 | Check 6869 | | -113.08 | 506,417.56 |
| 12-23 | Wire Transfer-Out | | -102,000.00 | 404,417.56 |
| | Michael Keister | | | |
| 12-23 | Wire Transfer-IN | 261,000.00 | | 665,417.56 |
| | JET NETWORK LLC OU TGOING | | | |
| 12-23 | Preauthorized Credit | 34,552.98 | | 699,970.54 |
| | AMERICAN EXPRESS SETTLEMENT 051223 4091484980 | | | |
| 12-23 | Transfer Debit | | -4,648.51 | 695,322.03 |
| | TRANSFER TO DEPOSIT ACCOUNT 6003440104 | | | |
| 12-23 | Preauthorized Wd | | -100,000.00 | 595,322.03 |
| | AMERICAN EXPRESS ELEC REMIT 051223 | | | |
| 12-23 | Preauthorized Wd | | -27,519.75 | 567,802.28 |
| | AMERICAN EXPRESS ELEC REMIT 051223 | | | |

| NAME OF CERTIFICATE HOLDER | PLACE OF RESIDENCE | TIME BECAME OWNER | CERTIFICATES ISSUED | | FROM WHOM TRANSFERRED [If Original Issue Enter As Such] |
|---|---|---|---|---|---|
| | | | CERTIF. NOS. | NO. SHARES | |
| **A** | | | | | |
| Delano Bellew | 1540 Gulf Blvd. Clearwater Fl 34630 | 5/23/96 | 1 | 1000 | Original |
| **B** | | | | | |
| **C** | | | | | |
| **D** | | | | | |
| William Edwards | | 3/11/98 | 3 | 1000 | Original |
| **E** | | | | | |
| **F** | | | | | |
| B. Gray Gibbs | 406 - 17 Ave. NE St. Pete, Fl 33704 | 5/23/96 | 2 | 1000 | Original |
| **G** | | | | | |

ML001185

| AMOUNT PAID THEREON | DATE OF TRANSFER OF SHARES* | TO WHOM TRANSFERRED | CERTIFICATES SURRENDERED | | NUMBER OF SHARES* HELD (BALANCE) | VALUE OF TRANSFER TAX STAMP AFFIXED |
|---|---|---|---|---|---|---|
| | | | CERTIF. NOS. | NO. SHARES* | | |
| | 1/15/06 | Jet First, Inc. | 1 | 1,000 | | |
| | 1/15/06 | Jet First, Inc. | 3 | 1,000 | | |
| | 1/31/02 | Executive Charters, Inc. (Redeemed | 2 | 1,000 | | |

ML001186

## IRREVOCABLE STOCK POWER

FOR VALUE RECEIVED, the undersigned does hereby sell, assign and transfer to JETFIRST, INC., a Florida corporation , Social Security or Tax Identifying Number: _____ , one thousand (1,000) shares of the common stock of Executive Charters, Inc., a Florida corporation, represented by certificate Number 1, standing in the name of the undersigned on the books of said company.

The undersigned does hereby irrevocably constitute and appoint HAMDEN H. BASKIN, III, attorney to transfer the said stock on the books of said company with full power of substitution in the premises.

DATED January 15, 2006.

_____
Delano E. Bellew
Shareholder

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing Irrevocable Stock Power was acknowledged before me this 16 day of January 2006, by Delano E. Bellew, who is personally known to me or who has produced _____ as identification and who did take an oath.

_____
Notary Public
My commission expires:

NOTARY PUBLIC
STATE OF FLORIDA
**Glenda J. Sasser**
Commission # DD490687
Expires November 14, 2009
Bonded Troy Fain - Insurance, Inc. 800-385-7019

{ 00010718.DOC;1}

CASE NO. 08-11165-BKC-RAM

ML001187

## IRREVOCABLE STOCK POWER

FOR VALUE RECEIVED, the undersigned does hereby sell, assign and transfer to JETFIRST, INC., a Florida corporation , Social Security or Tax Identifying Number: _____ one thousand (1,000) shares of the common stock of Executive Charters, Inc., a Florida corporation, represented by certificate Number 3 inclusive, standing in the name of the undersigned on the books of said company.

The undersigned does hereby irrevocably constitute and appoint HAMDEN H. BASKIN, III, attorney to transfer the said stock on the books of said company with full power of substitution in the premises.

DATED January 15, 2006.

_____
William Edwards

Shareholder

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing Irrevocable Stock Power was acknowledged before me this _15th_ day of January 2006, by William Edwards, who is personally known to me or who has produced _____ as identification and who did take an oath.

Cheryl G. Graham
Commission #DD299578
Expires: Mar 14, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

_____
Notary Public
My commission expires:

{ 00009745.DOC;2}



CASE NO. 08-11165-BKC-RAM

ML001189

PASTE CANCELLED CERTIFICATE IN THIS SPACE

CERTIFICATE No. 4 _____ FOR 2,000 _____ SHARES (or units, membership interests, partnership interests, etc., as appropriate)

ISSUED TO

Jet First Inc.

DATED January 15, 2006

Transfer From Original Issue

FROM WHOM TRANSFERRED:

Delano E. Bellew and William Edwards

DATED

| ORIGINAL CERTIFICATE NUMBER | ORIGINAL NUMBER | NUMBER TRANSFERRED |
|---|---|---|
| 1 | 1,000 | 1,000 |
| 3 | 1,000 | 1,000 |

CANCELLATION OF STAMPS:
In ink, mark stamps with initials, day, month and year; make 3 parallel incisions lengthwise thru stamp at time of affixing. Stamp shall not be so defaced as to prevent ready determination of its denomination and genuineness.

RECEIVED CERTIFICATE No. _____ FOR _____ SHARES (or units, membership interests, partnership interests, etc., as appropriate)

THIS _____ DAY OF _____

Transfer Details For Surrendered Certificate

NEW CERTIFICATES ISSUED TO:

| NUMBER TRANSFERRED | NUMBER OF NEW CERTIFICATES |
|---|---|
| | |

ML001190

# State of Florida
## Department of State

I certify from the records of this office that EXECUTIVE CHARTERS, INC. is a corporation organized under the laws of the State of Florida, filed on May 28, 1996, effective May 23, 1996.

The document number of this corporation is P96000047141.

I further certify that said corporation has paid all fees due this office through December 31, 2005, that its most recent annual report was filed on March 1, 2005, and its status is active.

I further certify that said corporation has not filed Articles of Dissolution.

*Given under my hand and the Great Seal of Florida, at Tallahassee, the Capital, this the Sixteenth day of December, 2005*

### Secretary of State

Authentication ID: 300062217223-121605-P96000047141

To authenticate this certificate, visit the following site, enter this ID, and then follow the instructions displayed.
www.sunbiz.org/auth.html

CASE NO. 08-11165-BKC-RAM

ML001184



Christopher Doscher <christopher.doscher@gmail.com>

## ECI Documents
8 messages

**Seth Coblentz <sethc@jetnetwork.com>**                    Thu, May 24, 2007 at 4:26 PM
To: christopher.doscher@gmail.com
Cc: Sam Zaharis <szaharis@pegasusconsultinggroup.com>

Attached are the documents that provide corporate authority to make the transfer, as executed on May 17th (ECI Stock/ Share Transfer Agreement). Upon review of the books and conversations, the overview of the transfers is as follows:

1. May 23rd, 1996, Delano and Gibbs, both officers of ECI, each purchased 1,000 shares of stock at a par value of $1.00 per share. Therefore, the 2,000 issued shares represented the only outstanding stock in the company.
2. January 15th, 2006, Doscher loaned to JF $100,000.00 so that JF could purchase all the shares in ECI (and its only non-transferred asset, the Part 135 Certificate). JF then paid to Delano and Gibbs $100,000.00 in full consideration for a 100% interest (2,000 shares) in ECI. Shares were transferred under Stock Certificate No. 4.
3. Immediately thereafter, JF transferred to Chris Doscher the 100% interest in ECI (2,000 shares) as evidenced by Stock Certificate No. 5. The consideration for this transaction was that it was done in satisfaction of JF's $100,000.00 indebtedness to Doscher (i.e., the loan to JF so that it could initially purchase the shares).
4. On May 17th, Doscher executed an Agreement transferring the 100% interest (2,000 shares) to Paul Parmar (or his designee) in consideration for forgiveness of indebtedness in the amount of $150,000.00.

Chris, please sign each of these and date, email or fax (below number) the documents to me, and mail the originals to Jet Network to my attention. In the alternative, let me know what changes we need to make.

Seth J. Coblentz

Director of Legal Affairs

JetNetwork

O 888-255-5387

C 786-301-7091

**EXHIBIT**

B

F 888-268-3482

SethC@jetnetwork.com

www.jetnetwork.com

2 attachments

 ECI Minutes of Special Meeting (5-15-07).doc
31K

 Jet First Minutes of Special Meeting (5-15-07).doc
30K

**Christopher Doscher <christopher.doscher@gmail.com>**                    Fri, May 25, 2007 at 8:04 AM
To: Melissa Gonzalez <melissa.gonzalez12@gmail.com>

Save this...very important... you should read this VERY carefully and tell me what it says... I have signed this and FAXED to Seth..

Thanks..

Chris
[Quoted text hidden]
[Quoted text hidden]

2 attachments

 ECI Minutes of Special Meeting (5-15-07).doc
31K

 Jet First Minutes of Special Meeting (5-15-07).doc
30K

**Christopher Doscher <christopher.doscher@gmail.com>**                    Fri, May 25, 2007 at 8:05 AM
To: Seth Coblentz <sethc@jetnetwork.com>

Done... and Faxed... just changed the Estancia address in Clearwater to Palm Beach address..

Chris

[Quoted text hidden]

---

**Melissa Gonzalez <melissa.gonzalez12@gmail.com>**                   Fri, May 25, 2007 at 8:14 AM
To: Christopher Doscher <christopher.doscher@gmail.com>

I have read both.........in the eci min.....#3 reads $150k.....does this make sense to you or am I missing
something?

That the transfer shall be made for good and valuable consideration, in the amount of
$150, 000.00, which payment shall be in the form of forgiveness of indebtedness in that
amount to Paul Parmar (or his designee). That is, those amounts of monies that Doscher
has been loaned personally, or for which he is a guarantor of loans made by Parmar to Jet
First, Inc. and/or Executive Charters, Inc., shall be reduced by an amount of $150, 000.00.
[Quoted text hidden]

---

**Christopher Doscher <christopher.doscher@gmail.com>**               Fri, May 25, 2007 at 8:25 AM
To: Melissa Gonzalez <melissa.gonzalez12@gmail.com>

That is, those amounts of monies that Doscher has been loaned personally, or
for which he is a guarantor of loans made by Parmar to Jet First, Inc. and/or
Executive Charters, Inc., shall be reduced by an amount of $150, 000.00

[Quoted text hidden]

---

**Christopher Doscher <christopher.doscher@gmail.com>**               Fri, May 25, 2007 at 8:26 AM
To: Melissa Gonzalez <melissa.gonzalez12@gmail.com>

Yes... the 150k is correct...

On 5/25/07, **Melissa Gonzalez** <melissa.gonzalez12@gmail.com> wrote:
[Quoted text hidden]

---

**Melissa Gonzalez <melissa.gonzalez12@gmail.com>**                   Fri, May 25, 2007 at 8:27 AM
To: Christopher Doscher <christopher.doscher@gmail.com>

ok
[Quoted text hidden]

---

**Seth Coblentz <sethc@jetnetwork.com>**                              Fri, May 25, 2007 at 8:47 AM
To: Christopher Doscher <christopher.doscher@gmail.com>

Okay, thanks.

---

**From:** Christopher Doscher [mailto:christopher.doscher@gmail.com]

**Sent:** Friday, May 25, 2007 8:06 AM
**To:** Seth Coblentz
**Subject:** Re: ECI Documents

Done... and Faxed... just changed the Estancia address in Clearwater to Palm Beach address..

Chris

On 5/24/07, **Seth Coblentz** <sethc@jetnetwork.com> wrote:

Attached are the documents that provide corporate authority to make the transfer, as executed on May 17th (ECI Stock/ Share Transfer Agreement).  Upon review of the books and conversations, the overview of the transfers is as follows:

1.  May 23rd, 1996, Delano and Gibbs, both officers of ECI, each purchased 1,000 shares of stock at a par value of $1.00 per share.  Therefore, the 2,000 issued shares represented the only outstanding stock in the company.
2.  January 15th, 2006, Doscher loaned to JF $100,000.00 so that JF could purchase all the shares in ECI (and its only non-transferred asset, the Part 135 Certificate).  JF then paid to Delano and Gibbs $100,000.00 in full consideration for a 100% interest (2,000 shares) in ECI.  Shares were transferred under Stock Certificate No. 4.
3.  Immediately thereafter, JF transferred to Chris Doscher the 100% interest in ECI (2,000 shares) as evidenced by Stock Certificate No. 5.  The consideration for this transaction was that it was done in satisfaction of JF's $100, 000.00 indebtedness to Doscher (i.e., the loan to JF so that it could initially purchase the shares).
4.  On May 17th, Doscher executed an Agreement transferring the 100% interest (2,000 shares) to Paul Parmar (or his designee) in consideration for forgiveness of indebtedness in the amount of $150, 000.00.

Chris, please sign each of these and date, email or fax (below number) the documents to me, and mail the originals to Jet Network to my attention.  In the alternative, let me know what changes we need to make.

Seth J. Coblentz

Director of Legal Affairs

JetNetwork

O 888-255-5387

C 786-301-7091

F 888-268-3482

SethC@jetnetwork.com

www.jetnetwork.com

## MINUTES OF SPECIAL JOINT MEETING
## OF THE BOARD OF DIRECTORS AND SHAREHOLDERS
## OF JET FIRST, INC.

A Special Joint Meeting of Stockholders and Directors of JET FIRST, INC., a Florida corporation, was held at 3800 Southern Blvd., Ste 109, West Palm Beach, FL 33406, at 10:00 a.m, on January 15, 2006.

Present and attending was Christopher K. Doscher, President/ Director/ and Shareholder of the corporation. Doscher called the meeting to order and stated that a quorum of stockholders and directors was present for the conduct of business before the meeting.

Upon motion duly made and carried, it was

**RESOLVED**, that the following acts be and they hereby are ratified and confirmed:

1.  That Christopher K. Doscher as President and sole director/ shareholder of company, be authorized to enter into, and may at anytime enter into, a Stock Transfer/ Share Agreement, transferring to Doscher individually (or his designee), all interest in the company's 2,000 shares of stock in Executive Charters, Inc., which shares represent the entire issued and outstanding stock certificates, which certificates are solely owned and held by Jet First, Inc.; and

2.  That in consideration for the transfer of the company's shares to Doscher, Doscher shall forgive Jet First's indebtedness to him individually, in the amount of $100,000.00, which indebtedness is the result of Doscher's various loans to the company, including such loan in the amount of $100,000.00 which was used to purchase the initial 2,000 shares for the benefit of Jet First, Inc.

3.  That Jet First, Inc. shall further execute all requisite documents to affect the legal transfer of the shares to Doscher.

There being no further business to come before the meeting, same was, upon motion duly made, carried and adjourned.

Dated as of January 15, 2006

**Shareholder(s)/ Director(s):**

_____
Christopher K. Doscher

## MINUTES OF SPECIAL JOINT MEETING
## OF THE BOARD OF DIRECTORS AND SHAREHOLDERS
## OF EXECUTIVE CHARTERS, INC.

A Special Joint Meeting of Stockholders and Directors of EXECUTIVE CHARTERS, INC., a Florida corporation, was held at 2430 Estancia Blvd., Ste 104, Clearwater, FL 33761, at 10:00 a.m, on May 15, 2007.

Present and attending was Christopher K. Doscher, the sole stockholder and director of the corporation. Doscher called the meeting to order and stated that a quorum of stockholders and directors was present for the conduct of business before the meeting.

Upon motion duly made and carried, it was

**RESOLVED,** that the following acts be and they hereby are ratified and confirmed:

1.      That Christopher K. Doscher as President and sole director/ shareholder of company, be authorized to enter into, and does enter into, a Stock Transfer/ Share Agreement, transferring to Paul Parmar (or his designee), all interest in the company, including its FAA Air Carrier Certificate (# EOXA241J), as represented by all of its outstanding stock certificates, which certificates are solely owned and held by Christopher K. Doscher; and

2.      That Christopher K. Doscher take all other action reasonably necessary, including the filing of any documents required by the Department of Transportation, or the Federal Aviation Administration, or any other regulatory body, in order to transfer the FAA Air Carrier Certificate to Paul Parmar (or his designee) for his beneficial use; and

3.      That the transfer shall be made for good and valuable consideration, in the amount of $150,000.00, which payment shall be in the form of forgiveness of indebtedness in that amount to Paul Parmar (or his designee). That is, those amounts of monies that Doscher has been loaned personally, or for which he is a guarantor of loans made by Parmar to Jet First, Inc. and/or Executive Charters, Inc., shall be reduced by an amount of $150,000.00.

There being no further business to come before the meeting, same was, upon motion duly made, carried and adjourned.

Dated as of May 15, 2007

Shareholder(s)/ Director(s):

_____

Christopher K. Doscher

## EXECUTIVE CHARTERS, INC.'S CERTIFICATE
## TRANSFER AGREEMENT

This Agreement is entered into this _____ day of May, 2007, by and among, **Christopher K. Doscher**, individually ("Doscher"), **Paul Parmar**, individually, or his assignee ("Parmar"), **Executive Charters, Inc.**, a Florida corporation ("ECI"), and **Jet First, Inc.**, a Florida Corporation ("Jet First").

## RECITALS

**WHEREAS** Parmar has made various loans (the "Loans") to Jet First, for its benefit and the benefit of Doscher and ECI; and

**WHEREAS** Jet First remains indebted to Parmar in the approximate amount of $10,000,00.00 (Ten Million U.S. Dollars); and

**WHEREAS** the indebtedness of Jet First to Parmar is jointly and severally guaranteed by personal pledges, including, that of Doscher; and

**WHEREAS** Doscher and/or Jet First is the legal and beneficial owner of ECI and all of its assets; and

**WHEREAS** ECI includes among its assets an FAA issued Air Carrier Certificate, identified as Certificate No. EOXA241J (the "Certificate") (attached and made a part hereof, as **Exhibit "A"** is a copy of the Certificate); and

**WHEREAS** Parmar and/or Nominee(s) has offered to purchase and ECI, Jet First and Doscher (collectively, the "Owners") have agreed to sell the Certificate to Parmar, pursuant to the terms of this Agreement.

**NOW THEREFORE**, in consideration of the mutual covenants and premises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties intending to be legally bound to agree as follows.

## AGREEMENT

1.    **Incorporation Clause.**    The above and foregoing preambles are incorporated herein by reference as though fully set forth at length within this Agreement.

2.    **Payment.**    The Owners agree to sell, and Parmar agrees to purchase, the Certificate for $150,000.00 (One-Hundred and Fifty Thousand U.S. Dollars). Upon execution of this Agreement, Parmar acknowledges that Jet First and Doscher's amount of indebtedness to Parmar, pursuant to the Loans, shall be diminished in the amount of $150,000.00. No other documents need be executed to finalize this transaction, though, Parmar shall execute any other documents reasonably requested by Jet First and Doscher to reflect the accounting of this transaction.

**3.**    **Transfer of Certificate**.    Within five (5) business days of the execution of this Agreement, the Owners mutually agree to execute all documents necessary to reflect to Parmar's one-hundred percent ownership of the Certificate.  Further, the Owners shall take all other actions reasonably required by the FAA, and other administrative bodies, to assure that ownership of the Certificate legally vests in Parmar.

**4.**    **Authority**.    The undersigned persons executing this Agreement on behalf of the respective parties represents and warrants that he has the proper authority to do so and is legally competent to execute this Agreement and to authorize each of the parties to carry out and perform all of the obligations prescribed by this Agreement.

**5.**    **Miscellaneous**.    In the event any party is required to seek redress of the courts to enforce the terms of this Agreement, Florida law shall govern the dispute and the exclusive Jurisdiction and Venue shall be Miami-Dade County, Florida.  In the event litigation is instituted, the prevailing party shall be entitled to recover all reasonable costs and attorneys' fees in connection with the suit.

**6.**    **Entire Agreement**.    This Certificate Transfer Agreement constitutes the entire and complete understanding  between the Parties, and no other representation, promises, or agreements shall be binding upon the parties unless set forth herein, nor shall any modifications of this Agreement be binding upon the Parties unless it is in writing and executed by the Parties.

IN WITNESS WHEREOF, the undersigned hereunto sets his hand as of the _____ day of May 2007.

JET FIRST, INC.                                    EXECUTIVE CHARTERS, INC.

By:_____            By:_____
    Christopher K. Doscher                          Christopher K. Doscher
    President                                                    President


CHRISTOPHER K. DOSCHER                PAUL PARMAR

By:_____            By:_____
    Individually                                                Individually

                                    **Christopher Doscher <christopher.doscher@gmail.com>**

---

# ECI Documents

8 messages

---

**Seth Coblentz <sethc@jetnetwork.com>**                    Thu, May 24, 2007 at 4:26 PM
To: christopher.doscher@gmail.com
Cc: Sam Zaharis <szaharis@pegasusconsultinggroup.com>

Attached are the documents that provide corporate authority to make the transfer, as executed on May 17th (ECI Stock/ Share Transfer Agreement). Upon review of the books and conversations, the overview of the transfers is as follows:

1. May 23rd, 1996, Delano and Gibbs, both officers of ECI, each purchased 1,000 shares of stock at a par value of $1.00 per share. Therefore, the 2,000 issued shares represented the only outstanding stock in the company.
2. January 15th, 2006, Doscher loaned to JF $100,000.00 so that JF could purchase all the shares in ECI (and its only non-transferred asset, the Part 135 Certificate). JF then paid to Delano and Gibbs $100,000.00 in full consideration for a 100% interest (2,000 shares) in ECI. Shares were transferred under Stock Certificate No. 4.
3. Immediately thereafter, JF transferred to Chris Doscher the 100% interest in ECI (2,000 shares) as evidenced by Stock Certificate No. 5. The consideration for this transaction was that it was done in satisfaction of JF's $100,000.00 indebtedness to Doscher (i.e., the loan to JF so that it could initially purchase the shares).
4. On May 17th, Doscher executed an Agreement transferring the 100% interest (2,000 shares) to Paul Parmar (or his designee) in consideration for forgiveness of indebtedness in the amount of $150,000.00.

Chris, please sign each of these and date, email or fax (below number) the documents to me, and mail the originals to Jet Network to my attention. In the alternative, let me know what changes we need to make.

Seth J. Coblentz

Director of Legal Affairs

JetNetwork

O 888-255-5387

C 786-301-7091

F 888-268-3482

SethC@jetnetwork.com

www.jetnetwork.com

---

**2 attachments**

 **ECI Minutes of Special Meeting (5-15-07).doc**
31K

 **Jet First Minutes of Special Meeting (5-15-07).doc**
30K

---

**Christopher Doscher <christopher.doscher@gmail.com>**          Fri, May 25, 2007 at 8:04 AM
To: Melissa Gonzalez <melissa.gonzalez12@gmail.com>

Save this...very important... you should read this VERY carefully and tell me what it says... I have signed this
and FAXED to Seth..

Thanks..

Chris
[Quoted text hidden]

[Quoted text hidden]

---

**2 attachments**

 **ECI Minutes of Special Meeting (5-15-07).doc**
31K

 **Jet First Minutes of Special Meeting (5-15-07).doc**
30K

---

**Christopher Doscher <christopher.doscher@gmail.com>**          Fri, May 25, 2007 at 8:05 AM
To: Seth Coblentz <sethc@jetnetwork.com>

Done... and Faxed... just changed the Estancia address in Clearwater to Palm Beach address..

Chris

[Quoted text hidden]

---

**Melissa Gonzalez <melissa.gonzalez12@gmail.com>**                Fri, May 25, 2007 at 8:14 AM
To: Christopher Doscher <christopher.doscher@gmail.com>

I have read both.........in the eci min.....#3  reads $150k.....does this make sense to you or am I missing something?

That the transfer shall be made for good and valuable consideration, in the amount of $150, 000.00, which payment shall be in the form of forgiveness of indebtedness in that amount to Paul Parmar (or his designee).  That is, those amounts of monies that Doscher has been loaned personally, or for which he is a guarantor of loans made by Parmar to Jet First, Inc. and/or Executive Charters, Inc., shall be reduced by an amount of $150, 000.00.

[Quoted text hidden]

---

**Christopher Doscher <christopher.doscher@gmail.com>**              Fri, May 25, 2007 at 8:25 AM
To: Melissa Gonzalez <melissa.gonzalez12@gmail.com>

That is, those amounts of monies that Doscher has been loaned personally, or for which he is a guarantor of loans made by Parmar to Jet First, Inc. and/or Executive Charters, Inc., shall be reduced by an amount of $150, 000.00

[Quoted text hidden]

---

**Christopher Doscher <christopher.doscher@gmail.com>**              Fri, May 25, 2007 at 8:26 AM
To: Melissa Gonzalez <melissa.gonzalez12@gmail.com>

Yes... the 150k is correct...

On 5/25/07, **Melissa Gonzalez** <melissa.gonzalez12@gmail.com> wrote:
[Quoted text hidden]

---

**Melissa Gonzalez <melissa.gonzalez12@gmail.com>**                Fri, May 25, 2007 at 8:27 AM
To: Christopher Doscher <christopher.doscher@gmail.com>

ok
[Quoted text hidden]

---

**Seth Coblentz <sethc@jetnetwork.com>**                            Fri, May 25, 2007 at 8:47 AM
To: Christopher Doscher <christopher.doscher@gmail.com>

Okay, thanks.

---

**From:** Christopher Doscher [mailto:christopher.doscher@gmail.com]

**Sent:** Friday, May 25, 2007 8:06 AM
**To:** Seth Coblentz
**Subject:** Re: ECI Documents


Done... and Faxed...  just changed the Estancia address in Clearwater to Palm Beach address..


Chris


On 5/24/07, **Seth Coblentz** <sethc@jetnetwork.com> wrote:

Attached are the documents that provide corporate authority to make the transfer, as executed on May 17th (ECI Stock/ Share Transfer Agreement).  Upon review of the books and conversations, the overview of the transfers is as follows:


1.  May 23rd, 1996, Delano and Gibbs, both officers of ECI, each purchased 1,000 shares of stock at a par value of $1.00 per share.  Therefore, the 2,000 issued shares represented the only outstanding stock in the company.
2.  January 15th, 2006, Doscher loaned to JF $100,000.00 so that JF could purchase all the shares in ECI (and its only non-transferred asset, the Part 135 Certificate).  JF then paid to Delano and Gibbs $100,000.00 in full consideration for a 100% interest (2,000 shares) in ECI.  Shares were transferred under Stock Certificate No. 4.
3.  Immediately thereafter, JF transferred to Chris Doscher the 100% interest in ECI (2,000 shares) as evidenced by Stock Certificate No. 5.  The consideration for this transaction was that it was done in satisfaction of JF's $100,000.00 indebtedness to Doscher (i.e., the loan to JF so that it could initially purchase the shares).
4.  On May 17th, Doscher executed an Agreement transferring the 100% interest (2,000 shares) to Paul Parmar (or his designee) in consideration for forgiveness of indebtedness in the amount of $150,000.00.


Chris, please sign each of these and date, email or fax (below number) the documents to me, and mail the originals to Jet Network to my attention.  In the alternative, let me know what changes we need to make.


Seth J. Coblentz

Director of Legal Affairs

JetNetwork

O 888-255-5387

C 786-301-7091

F 888-268-3482

SethC@jetnetwork.com

www.jetnetwork.com

## MINUTES OF SPECIAL JOINT MEETING
## OF THE BOARD OF DIRECTORS AND SHAREHOLDERS
## OF JET FIRST, INC.

A Special Joint Meeting of Stockholders and Directors of JET FIRST, INC., a Florida corporation, was held at 3800 Southern Blvd., Ste 109, West Palm Beach, FL 33406, at 10:00 a.m, on January 15, 2006.

Present and attending was Christopher K. Doscher, President/ Director/ and Shareholder of the corporation. Doscher called the meeting to order and stated that a quorum of stockholders and directors was present for the conduct of business before the meeting.

Upon motion duly made and carried, it was

**RESOLVED,** that the following acts be and they hereby are ratified and confirmed:

1. That Christopher K. Doscher as President and sole director/ shareholder of company, be authorized to enter into, and may at anytime enter into, a Stock Transfer/ Share Agreement, transferring to Doscher individually (or his designee), all interest in the company's 2,000 shares of stock in Executive Charters, Inc., which shares represent the entire issued and outstanding stock certificates, which certificates are solely owned and held by Jet First, Inc.; and

2. That in consideration for the transfer of the company's shares to Doscher, Doscher shall forgive Jet First's indebtedness to him individually, in the amount of $100,000.00, which indebtedness is the result of Doscher's various loans to the company, including such loan in the amount of $100,000.00 which was used to purchase the initial 2,000 shares for the benefit of Jet First, Inc.

3. That Jet First, Inc. shall further execute all requisite documents to affect the legal transfer of the shares to Doscher.

There being no further business to come before the meeting, same was, upon motion duly made, carried and adjourned.

Dated as of January 15, 2006

Shareholder(s)/ Director(s):

_____

Christopher K. Doscher

## MINUTES OF SPECIAL JOINT MEETING
## OF THE BOARD OF DIRECTORS AND SHAREHOLDERS
## OF EXECUTIVE CHARTERS, INC.

A Special Joint Meeting of Stockholders and Directors of EXECUTIVE CHARTERS, INC., a Florida corporation, was held at 2430 Estancia Blvd., Ste 104, Clearwater, FL 33761, at 10:00 a.m, on May 15, 2007.

Present and attending was Christopher K. Doscher, the sole stockholder and director of the corporation. Doscher called the meeting to order and stated that a quorum of stockholders and directors was present for the conduct of business before the meeting.

Upon motion duly made and carried, it was

**RESOLVED,** that the following acts be and they hereby are ratified and confirmed:

1.  That Christopher K. Doscher as President and sole director/ shareholder of company, be authorized to enter into, and does enter into, a Stock Transfer/ Share Agreement, transferring to Paul Parmar (or his designee), all interest in the company, including its FAA Air Carrier Certificate (# EOXA241J), as represented by all of its outstanding stock certificates, which certificates are solely owned and held by Christopher K. Doscher; and

2.  That Christopher K. Doscher take all other action reasonably necessary, including the filing of any documents required by the Department of Transportation, or the Federal Aviation Administration, or any other regulatory body, in order to transfer the FAA Air Carrier Certificate to Paul Parmar (or his designee) for his beneficial use; and

3.  That the transfer shall be made for good and valuable consideration, in the amount of $150,000.00, which payment shall be in the form of forgiveness of indebtedness in that amount to Paul Parmar (or his designee). That is, those amounts of monies that Doscher has been loaned personally, or for which he is a guarantor of loans made by Parmar to Jet First, Inc. and/or Executive Charters, Inc., shall be reduced by an amount of $150,000.00.

There being no further business to come before the meeting, same was, upon motion duly made, carried and adjourned.

Dated as of May 15, 2007

Shareholder(s)/ Director(s):

_____

Christopher K. Doscher

## EXECUTIVE CHARTERS, INC.'S CERTIFICATE
## TRANSFER AGREEMENT

This Agreement is entered into this _____ day of May, 2007, by and among, **Christopher K. Doscher**, individually ("Doscher"), **Paul Parmar**, individually, or his assignee ("Parmar"), **Executive Charters, Inc.**, a Florida corporation ("ECI"), and **Jet First, Inc.**, a Florida Corporation ("Jet First").

### RECITALS

**WHEREAS** Parmar has made various loans (the "Loans") to Jet First, for its benefit and the benefit of Doscher and ECI; and

**WHEREAS** Jet First remains indebted to Parmar in the approximate amount of $10,000,00.00 (Ten Million U.S. Dollars); and

**WHEREAS** the indebtedness of Jet First to Parmar is jointly and severally guaranteed by personal pledges, including, that of Doscher; and

**WHEREAS** Doscher and/or Jet First is the legal and beneficial owner of ECI and all of its assets; and

**WHEREAS** ECI includes among its assets an FAA issued Air Carrier Certificate, identified as Certificate No. EOXA241J (the "Certificate") (attached and made a part hereof, as **Exhibit "A"** is a copy of the Certificate); and

**WHEREAS** Parmar and/or Nominee(s) has offered to purchase and ECI, Jet First and Doscher (collectively, the "Owners") have agreed to sell the Certificate to Parmar, pursuant to the terms of this Agreement.

**NOW THEREFORE**, in consideration of the mutual covenants and premises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties intending to be legally bound to agree as follows.

### AGREEMENT

1.    **Incorporation Clause**.    The above and foregoing preambles are incorporated herein by reference as though fully set forth at length within this Agreement.

2.    **Payment**.    The Owners agree to sell, and Parmar agrees to purchase, the Certificate for $150,000.00 (One-Hundred and Fifty Thousand U.S. Dollars). Upon execution of this Agreement, Parmar acknowledges that Jet First and Doscher's amount of indebtedness to Parmar, pursuant to the Loans, shall be diminished in the amount of $150,000.00. No other documents need be executed to finalize this transaction, though, Parmar shall execute any other documents reasonably requested by Jet First and Doscher to reflect the accounting of this transaction.

**3.     Transfer of Certificate**.     Within five (5) business days of the execution of this Agreement, the Owners mutually agree to execute all documents necessary to reflect to Parmar's one-hundred percent ownership of the Certificate.  Further, the Owners shall take all other actions reasonably required by the FAA, and other administrative bodies, to assure that ownership of the Certificate legally vests in Parmar.

**4.     Authority**.     The undersigned persons executing this Agreement on behalf of the respective parties represents and warrants that he has the proper authority to do so and is legally competent to execute this Agreement and to authorize each of the parties to carry out and perform all of the obligations prescribed by this Agreement.

**5.     Miscellaneous**.     In the event any party is required to seek redress of the courts to enforce the terms of this Agreement, Florida law shall govern the dispute and the exclusive Jurisdiction and Venue shall be Miami-Dade County, Florida.  In the event litigation is instituted, the prevailing party shall be entitled to recover all reasonable costs and attorneys' fees in connection with the suit.

**6.     Entire Agreement**.     This Certificate Transfer Agreement constitutes the entire and complete understanding  between the Parties, and no other representation, promises, or agreements shall be binding upon the parties unless set forth herein, nor shall any modifications of this Agreement be binding upon the Parties unless it is in writing and executed by the Parties.

IN WITNESS WHEREOF, the undersigned hereunto sets his hand as of the _____ day of May 2007.

JET FIRST, INC.                              EXECUTIVE CHARTERS, INC.

By:_____       By:_____
    Christopher K. Doscher                 Christopher K. Doscher
    President                                      President


CHRISTOPHER K. DOSCHER          PAUL PARMAR

By:_____       By:_____
    Individually                               Individually

2